IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARISSA LEONG SALOMON                            *
7187 Stillwater Court
Frederick, MD 21702                              *

v.                                               *

MICHAEL CHERTOFF, SECRETARY,                     *        Case No. _____
DEPARTMENT OF HOMELAND SECURITY,
U.S. CUSTOMS AND BORDER PROTECTION               *
As an individual and in his official capacity
1300 Pennsylvania Avenue
Washington, D.C. 20229                           *

v.

Christopher Hess, as an individual
and in his official capacity

Serve on:    Christopher Hess
             1300 Pennsylvania Avenue
             Washington, D.C. 20229

v.

Valentine Garcia, as an individual
and in his official capacity

Serve on:    Valentine Garcia
             1300 Pennsylvania Avenue
             Washington, D.C. 20229

v.

Bruce LaBombard, as an individual               *
and in his official capacity

Serve on:    Bruce LaBombard
             1300 Pennsylvania Avenue
             Washington, D.C. 20229

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.    This lawsuit alleges gender and disability discrimination by the Department of Homeland Security by its agency the U.S. Customs and Border Protection, Immigration and Naturalization Service (INS) in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e-16, the Rehabilitation Act of 1973, 29 U.S.C.S. §§ 791 and 794 and the Americans With Disabilities Act of 1990, as amended, Title I of the Civil Rights Act of 1991 ("ADA").

2.    The INS falsely accused Ms. Salomon of being mentally ill under its regulations because she submitted a doctor's note stating that she was suffering from depression. It removed her weapon due to this mental illness policy even though the policy states that a medical professional must certify a mental illness.   It subsequently forced her to undergo a physical examination and psychiatric examination to justify the removal of the weapon without any reasonable basis. The Fitness for Duty Exams were illegal fishing expeditions attempting to find mental or physical problems that would justify the perception that Ms. Salomon was mentally ill.  While all of this discrimination was occurring Ms. Salomon suffered loss of pay, workplace humiliation and frustration, and a reduced level of protection due to the illegal removal of her weapon as well as direct accusations by INS officials that she was mentally ill.

### THE PARTIES

3.    Plaintiff Marissa Leong Salomon ("Ms. Salomon") is a citizen of the State of Maryland.

4.    Defendant Department of Homeland Security is an agency of the United States (U.S.) government and his headquartered in Washington, DC.

5.    Defendant, Bruce LaBombard, served as Ms. Salomon's supervisor and discriminated against her in violation of the above cited Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000 et seq., the Rehabilitation Act of 1973, 29 U.S.C.S. §§ 791 and 794 and the ADA.

6.    Defendant, Christopher Hess, served as Ms. Salomon's Port Director and discriminated   against her in violation of the above citied Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S § 2000 et seq., the Rehabilitation Act of 1973, 29 U.S.C.S. §§ 791 and 794, and ADA.

7.    Defendant, Valentine Garcia, served as Ms. Salomon's Chief Assistant Port Director and discriminated against her in violation of the above cited Title VII of the Civil Rights Act of 1964 (Title VII),  42 U.S.C.S. § 2000 et seq., the Rehabilitation Act of 1973, 29 U.S.C.S. §§ 791 and 794 and the ADA.

## JURISDICTION AND VENUE

8.    Plaintiff invokes jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, and 1332.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (e).

## COMMON FACTS

10.    Ms. Salomon was hired by the United States Department of Justice, Immigration and Naturalization Service on August 07, 1997 at Los Angeles International Airport. The Department of Homeland Security absorbed the following agency and it became U.S. Customs and Border Protection (CBP).

11.    Ms. Salomon served CBP for 8 years as a CBP Officer earning $65,000.00 annually with overtime.

12.    At the time that the illegal conduct by CBP occurred Ms. Salomon was employed at Dulles International Airport as a CBP Officer, GS 11. Ms. Salomon began her employment at Washington Dulles Airport in July 2003.

13.    CBP Officers are armed, carrying a sidearm during the performance of their duties.

14.    CBP Officers are also permitted to perform some of their job duties without a sidearm.

15.    Ms. Salomon carried a firearm during her career and at all times complied with the law and department regulations concerning the carrying of a firearm.

16.    In the Spring of 2004, Ms. Salomon requested Leave Without Pay (LWOP) for one week from her supervisor Bruce LaBombard (LaBombard). This request was denied.

17.    LaBombard had previously approved leaves of absence for men in similar circumstances.

18.    Other supervisors have approved LWOP for men in similar circumstances.

19.    Pursuant to her efforts to obtain leave, Ms. Salomon sought leave donations through an agency Voluntary Leave Bank.

20.    In support of her leave request Ms. Salomon submitted a doctor's note April 28, 2004 which stated that she was being treated for "recurrent depression" and that she was requesting leave in order to "decrease emotional stress".

21.    DHS and INS were aware that Ms. Salomon had been regularly treated for recurrent depression since 1997 and that during this period of treatment she performed her job in an exemplary manner, including receiving performance awards and good evaluations.

22.    Ms. Salomon fully disclosed her treatment by a psychiatrist in August 1997 when she applied for the position with CBP and was subject to an SF-86 National Security Background Investigation. During the Single Scope Background Investigation (SSBI), the investigator visited the psychiatrist and reported Ms. Salomon was in excellent mental health. In 2000, during Ms. Salomon's five year re-investigation, she fully disclosed her treatment of depression and the investigator again concluded Ms. Salomon was in excellent mental health after visiting her psychiatrist. Ms Salomon held a secret clearance under Department of Justice/INS.

23.    In 2001, Ms. Salomon was subject to another SSBI for Top Secret clearance for a Federal Air Marshall position. Again, Ms. Salomon disclosed the condition and was deemed in excellent mental health and granted the TS clearance subject to the lifting of the hiring freeze and entrance on duty.

24.    Upon her transfer to Washington Dulles Airport in 2003, Ms. Salomon again underwent a SSBI fully disclosing her treatment and her psychiatrist. CBP management knew of Ms. Salomon's condition because of her constant upgrades in clearance.

25.     On May 27, 2004, as a result of her efforts to obtain leave, a Supervisor CBP Officer, Mr. LaBombard provided a letter to Ms. Salomon that he was revoking her authority to carry a firearm pursuant to Section 24 F(2) of the Immigration and Naturalization Service Firearms policy.

26.     Mr. LaBombard revoked Ms. Salomon's authority to carry a firearm at the direction of Port Director Hess and Chief Garcia.

27.     At the May 27, 2004 meeting, Mr. LaBombard interrogated Ms. Salomon about this doctor's note and her depression, asking her about the existence, nature, and severity of depression, her treatment and other medical questions related to her depression.

28.     LaBombard asked specifically 1) "We need to know any and all medications you are taking? How long will you need to take any and all medications?" This is a clear violation of the law.

29.     This conduct was done to harass and intimidate Ms. Salomon.

30.     Section 24F (2) of the INS Firearms Policy was the sole justification for the removal of Ms. Salomon's weapon.

31.     This decision to remove Ms. Salomon's weapon was made by LaBombard.

32.     Port Director Christopher Hess approved the decision by LaBombard to remove the weapon.

33.     Chief Garcia approved of the decision with LaBombard to remove the weapon.

34.    Section 24F (2)  contemplates removal of a weapon where a "mental illness" has been deemed to exist by a "mental health professional" to adversely affect the officer's judgment in the use of deadly force.

35.    Under Section 24 F (2) of the INS Firearms Policy, INS policy permits the revocation of a CBP Officer firearm where there exists "non-physical conditions or mental trauma related to mental illness deemed by a health professional to adversely affect the officer's judgment regarding the use of deadly force."

36.    DHS did not have a finding by a mental health professional that Ms. Salomon's depression affected her ability of judgment regarding the use of deadly force.  The statement that Ms. Salomon was under treatment for "recurrent depression" does not support the claim that Ms. Salomon had any condition that her doctor deemed affected Ms. Salomon's judgment regarding the use of force.

37.    The doctor's note indicated that Ms. Salomon was being treated for the "recurrent depression" since June of 1997.  Mr. LaBombard and other INS management knew that during this 6-7 year period of treatment for depression Ms. Salomon had never engaged in any improper use of force or use of her weapon but elected to ignore this fact and strip her of her weapon.

38.    In fact, Ms. Salomon received an award for Outstanding Situational Judgment while being treated for depression.

39.    Ms. Salomon contained a critical situation involving a bomb threat on September 11, 2001 while employed by the INS. Ms Salomon used her good judgment and

experience to protect the lives of passengers until the FBI could arrive to locate the bomb. All of these events occurred while Ms. Salomon was being treated for depression.

    40.    Ms. Salomon intercepted a major counterfeit document smuggler from Nigeria in Feb 2004 without the aid of the computer system. The apprehension of the subject was due to Ms. Salomon's judgment and insight. Ms Salomon later was a witness for the United States Government  in the United States District Court, Eastern Division, and Alexandria VA. The subject was convicted based on Ms. Salomon's testimony.

    41.    Although DHS eventually removed her weapon, LaBombard waited approximately one month after receiving her doctor's note before taking action and removing her weapon.  This time lapse is further evidence that strongly suggests that Mr. LaBombard was not acting pursuant to the law and that Ms. Salomon was never a direct threat and any concerns about her judgment were false, and pretextual.

    42.    The time lapse between the request for leave and removal of the weapon demonstrates the discriminatory intent of LaBombard, Garcia, and Hess in that they view it as an immediately threat to the safety of colleagues and civilians and only later used it to justify their discrimination.

    43.    The statement that Ms. Salomon needed a few days off to "decrease emotional stress" does not support the claim that Ms. Salomon had any condition that her doctor deemed affected Ms. Salomon's judgment regarding the use of force.

    44.    The management of INS, including LaBombard, stated to a government investigator that they believed that CBP officers at their location, Dulles International Airport, were under a great deal of stress on a daily basis. No CBP male officers were stripped of their

weapon because they stated that they were under stress or because their management believed that they were under stress.

45.    LaBombard's and INS's sole basis for ordering Ms. Salomon's weapon to be removed as set forth in the May 27, 2004 letter to her was the contents of the April 28, 2004 doctor's note.

46.    LaBombard and INS did not and do not remove the weapons of male CBP officers that suffer from stress.

47.    LaBombard and INS do not remove the weapons of male CBP officers when they are arrested for felony conduct such as drunk driving which demonstrates questionable judgment never exhibited by Ms. Salomon.

48.    LaBombard and INS do not remove the weapons of male CBP officers who engage in domestic violence, threaten others, or make racist comments to him.

49.    LaBombard and INS management discriminated against Ms. Salomon in ordering the removal of her weapon due to her gender.

50.    LaBombard and INS management discriminated against Ms. Salomon in ordering the removal of her weapon in violation of the Rehabilitation Act and the ADA.

51.    LaBombard and INS management violated the clear language of Section 24F (2) of the INS Firearms Policy when they used the doctor's note of April 28, 2004 to remove Ms. Salomon's weapon.

52.    LaBombard and INS management used the doctor's note of April 28, 2004 as a pretext to discriminate against Ms. Salomon due to her gender.

53.    LaBombard and INS management used the doctor's note of April 28, 2004 as a pretext to label Ms. Salomon as mentally ill and thus a pariah due to their personal prejudices over the medical condition of depression which they deemed to be a disability rendering one unfit to be a CBP officer.

54.    LaBombard and INS management used the doctor's note of April 28, 2004 as a pretext to retaliate against Ms. Salomon for seeking leave due to the medical condition of depression.

55.    LaBombard and INS management used the doctor's note of April 28, 2004 as a pretext to conclude that a woman with depression was unstable with a weapon while at the same time permitting similarly situated men who are wife beaters, alcoholics, drunk drivers, and who have expressed a proclivity toward violence to keep their weapon.

56.    LaBombard and INS management engaged in classic sexual stereotyping against Ms. Salomon.

57.    In removing Ms. Salomon's weapon due to this alleged "mental illness," Ms. Salomon was punished in violation of INS regulation.

58.    In removing this weapon Ms. Salomon was falsely accused of a mental illness when in fact no such determination of a mental health professional had been made. There was not a single incident or event that would cause Ms. Salomon's judgment to be questioned.

59.    Similarly situated male employees are not treated this way.  Similarly situated male CBP officers have engaged in more severe conduct calling into question their ability to carry firearms without incident. For example, CBP Officer Sinderson was arrested but did not have his firearm removed and was not required to take a Fitness for Duty Exam (FFDE).

CBP Officer Mike Hennebary was arrested and also did not have his weapon removed or ordered to take a FFDE. Ms. Salomon believes that discovery will show that this pattern and practice of different standards has been applied in other situations.

60.     When male officers have had their weapons removed, they were returned soon thereafter. Ms. Salomon's weapon was not returned for nine months.

61.     Senior Officer Norman Byrd threatened a supervisor and a contractor and his weapon was removed. However he was able to "talk it over" and have his weapon returned to him without having to undergo a physical or mental examination.

62.     Mr. Byrd's situation exemplifies the double standard applied to men.

63.     LaBombard has engaged in threatening physical conduct indicating a lake of emotional stability and not had his weapon removed.

64.     The Department of Homeland Security, by its agencies and employees and contractors, has engaged in a purposeful and knowing pattern and practice whereby its management removes weapons from female officers more frequently that similarly situated male officers. This pattern and practice has a disparate impact on female officers.

65.     Male employees were given LWOP while Ms. Salomon was denied LWOP. For example, Officer Sinderson, a male, was granted LWOP for an extended period of time, much longer that the one week requested by Ms. Salomon, for "personal problems." Ms. Salomon believes that discovery will show that this pattern and practice of different standards has been applied in other situations.

66.    On June 8, 2004, shortly after the removal of her weapon, Ms. Salomon provided a note from her doctor stating that she was "capable of exercising good judgment in carrying a firearm."

67.    LaBombard and INS management ignored this note.

68.    LaBombard and INS management ignored this note and refused to return Ms. Salomon's weapon in clear violation of INS policy.

69.    LaBombard, under penalty of perjury, told investigator Debra Sandler that Ms. Salomon's doctor stated she was on various medications. This statement was false. This conduct was further gender and disability discrimination as well as retaliation.

70.    Based on the two doctor's notes, the INS required Ms. Salomon to undergo a physical and psychiatric examination in violation of their own regulations.

71.    INS policy requires a current general medical examination before a psychological examination can be ordered.

72.    The INS procedures for scheduling Fitness for Duty Examinations (FFD) are set forth in "Fitness For Duty Standard Operating Procedures."

73.    The INS violated 5 CFR 339.301 by its treatment of Ms. Solomon. There was never any direct question about Ms. Salomon's continued capacity to meet the physical or medical requirements of her position. In fact, the clear evidence was that Ms. Salomon had been treated for depression for many years while performing exemplary and there was no work related conduct by her indicting that this status quo had changed or to any way call it into question.

74.    The INS also violated 5 CFR 339.301(e) (1) as it did not have any requisite behavior or action by Ms. Salomon that affected the safe and efficient performance of Ms. Salomon or others.

75.    Ms. Salomon sent a memorandum to Mr. Hess and the chain of command specifically asking, "[w]hat was the incident that precipitated the removal of my weapon?" INS management ignored Ms. Salomon's inquiry. Instead, INS management ordered a FFDE.

76.    During the process of scheduling this psychiatric examination, INS Labor and Employee Relations Official Loretta Lowe verbally abused Ms. Salomon, telling her that she was mentally unstable and uttering related insults.

77.    Lowe also refused to return Ms. Salomon's calls or to otherwise assist in her efforts to file discrimination charges against LaBombard and INS management.

78.    Ms. Lowe engaged in this conduct to perpetuate the harassment of Ms. Salomon and to make it as difficult as possible for Ms. Salomon.

79.    Fact finders are permitted by law to infer that such an order for a psychiatric evaluation was made with discriminatory intent, as it was ordered in violation of the agency's own regulation which it relied upon at the time as grounds for requiring the examination.

80.    The INS violated 29 C.F.R. Sections 1630.13(b) and 14(c) in its treatment of Ms. Salomon.

81.    The INS made illegal disability related inquiries of Ms. Salomon and forced her to undergo a psychiatric examination in violation of the Rehabilitation Act.

13

82.     Ms. Salomon was humiliated by the removal of her weapon, which effectively made her a second class employee denying her of overtime work and subjecting her to ridicule. This removal was a form of continued severe and pervasive harassment as her management knew that 1) she was being hurt economically; 2) she was not afforded the same level of protection even though she wore the uniform of a CBP; and 3) she was subjected to derisive comments flowing from her stigmatization of being unable to carry a weapon. This occurred in the context of a workplace where men who were identified as violent in domestic disputes, or who had committed a potential felony by driving under the influence of alcohol, were not stripped of their weapon.

83.     DHS continues to discriminate against Ms. Salomon by refusing her employment at the lowest levels of employment as a baggage screener. In doing so the DHS is continuing to retaliate against Ms. Salomon due to her protected status, and continues to believe that Ms. Salomon has a perceived disability and is therefore not eligible for hire.

84.     DHS again sent Ms. Salomon to a medical exam and asked for one year of psychiatric records in January 2008 in order to process her application for a Transportation Security Screener. Ms. Salomon's treatment has not changed since 1997. Ms Salomon was found disqualified because she disclosed her treatment of depression. As of March 31, 2008, Ms. Salomon is still unemployed because of the stigma associated with the removal of her weapon.

85.     The DHS psychiatrist, Dr. Lisa Gold found Ms Salomon capable of using deadly force during the FFDE.

86.     In a letter dated January, 2008 DHS told Ms. Salomon that she was not capable to perform duties of a baggage screener with the TSA due to her treatment of depression. This position requires only a high school diploma.

14

## COUNT 1
## GENDER DISCRIMINATION
## VIOLATION OF TITLE VII OF THE CIVIL
## RIGHTS ACT OF 1964, AS AMENDED
## (All Defendants)

87.   Ms. Salomon hereby incorporates the allegations set forth above in paragraphs 1 through 89.

88.   Ms. Salomon was discriminated against due to her gender.

89.   As a direct and proximate result of the conduct of INS removing her weapon, denying her the return of her weapon, denying her overtime, and depriving her of the other benefits of employment related to the use or possession of her weapon, Ms. Salomon has lost monetary and other benefits of employment with INS including but not limited to, wages.

90.   As a result of this conduct by INS Ms. Salomon was exposed to embarrassment, scorn from her co-workers, contempt and ridicule. She also suffered loss of sleep, irritation, and further mental anguish. INS management discriminated against Ms. Salomon by denying her request for LWOP and forcing her to undergo the humiliation of cleaning the break room and garbage cans. Discovery will show that INS manger Chief Valentine Garcia ordered Ms. Salomon to do the above.

WHEREFORE, Plaintiff, Marissa Leong Salomon, respectfully prays that this Court enter judgments against DHS and Christopher Hess, Valentine Garcia, and Bruce LaBombard, individually, and in their official capacity:

A.   Award damages to the plaintiff for the income and benefits of which he has been deprived to the date of the entry of judgment;

15

B.    Award plaintiff compensatory damages for her damages as set

forth above in detail;

C.    Order that the costs of maintaining this action, including

reasonable attorney fees, be awarded to the plaintiff;

D.    Enjoin the INS from enforcing or engaging in a weapon removal

policy or practice that discriminates against or disparately impacts women;

E.    Enjoin the INS from enforcing or engaging in a medical

examination policy or practice that discriminates against or disparately impacts women; and

F.    Order such other and further relief as this Court may deem just and

proper.

## COUNT II
### GENDER DISCRIMINATION
### HOSTILE ENVIRONMENT

91.    Ms. Salomon hereby incorporates the allegations set forth in paragraphs 1

90 above.

92.    The INS treatment of Ms. Salomon constituted a hostile environment due

to her gender in violation of Title VII of the Civil Rights Act of 1964 as amended.

93.    The discrimination by INS altered the terms and conditions of Ms.

Salomon's employment, including but not limited to her compensation and were otherwise

severe and pervasive.

WHEREFORE, plaintiff prays that this Court:

16

A.    Award damages to the plaintiff for the income and benefits of which he has been deprived to the date of the entry of judgment;

B.    Award plaintiff compensatory damages for her damages as set forth above in detail;

C.    Order that the costs of maintaining this action, including reasonable attorney fees, be awarded to the plaintiff;

D.    Enjoin the INS from enforcing or engaging in a weapon removal policy or practice that discriminates against or disparately impacts women;

E.    Enjoin the INS from enforcing or engaging in a medical examination policy or practice that discriminates against or disparately impacts women; and

F.    Order such other and further relief as this Court may deem just and proper.

## COUNT III
### Violation of the Rehabilitation Act of 1973
### (All Defendants)

94.    Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 93.

95.    The conduct by INS of interrogating Ms. Salomon concerning her medical condition and stigmatizing her by removing her weapon and forcing her to undergo a psychiatric evaluation in violation of clear INS regulations, were motivated by the perception that Ms. Salomon was disabled. This conduct constitutes discrimination based on perceived disability.

96.    INS make disability related inquiries of Ms. Salomon and required a psychiatric medical examination when it did not have a reasonable belief, based on objective

evidence that Ms. Salomon was unable to perform the essential functions of her job because of a medical condition or a reasonable belief that she was a direct threat because of a medical condition.

97.    Thereafter, INS continued to retaliate against Ms. Salomon for insisting that her legal rights under Title VII and the Rehabilitation Act were being violated by refusing to return her weapon and other retaliatory conduct.

WHEREFORE, Plaintiff, Marissa Leong Salomon, respectfully prays that this Court enter judgments against DHS and Christopher Hess, Valentine Garcia, and Bruce LaBombard, individually, and in their official capacity:

A.    Award damages to the plaintiff for the income and benefits of which he has been deprived to the date of the entry of judgment;

B.    Award plaintiff compensatory damages for her damages as set forth above in detail;

C.    Order that the costs of maintaining this action, including reasonable attorney fees, be awarded to the plaintiff;

D.    Enjoin the INS from enforcing or engaging in a weapon removal policy or practice that discriminates against or disparately impacts women;

E.    Enjoin the INS from enforcing or engaging in a medical examination policy or practice that discriminates against or disparately impacts women; and

F.    Order such other and further relief as this Court may deem just and proper.

### COUNT IV
### Violation of the Americans With Disabilities Act
### (All Defendants)

98.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 97.

99.     By the conduct set forth above INS has violated the Americans With Disabilities Act by interrogating Ms. Salomon concerning her medical condition and stigmatizing her by removing her weapon and forcing her to undergo a psychiatric evaluation in violation of clear INS regulations, were motivated by the perception that Ms. Salomon was disabled. This conduct constitutes discrimination based on perceived disability.

WHEREFORE, Plaintiff, Marissa Leong Salomon, respectfully prays that this Court enter judgments against DHS and Christopher Hess, Valentine Garcia, and Bruce LaBombard, individually, and in their official capacity:

A.     Award damages to the plaintiff for the income and benefits of which he has been deprived to the date of the entry of judgment;

B.     Award plaintiff compensatory damages for her damages as set forth above in detail;

C.     Order that the costs of maintaining this action, including reasonable attorney fees, be awarded to the plaintiff;

D.     Enjoin the INS from enforcing or engaging in a weapon removal policy or practice that discriminates against or disparately impacts women;

E.    Enjoin the INS from enforcing or engaging in a medical examination

policy or practice that discriminates against or disparately impacts women; and

F.    Order such other and further relief as this Court may deem just and proper.

### COUNT IV –
### Violation of the Americans With Disabilities Act
### and Rehabilitation Act – Retaliation
### (All Defendants)

100.    Ms. Salomon hereby incorporates the allegations set forth in paragraphs 1
through 99 above.

101.    When Ms. Salomon presented her doctor's note indicating that she was
suffering from depression and mental stress the INS retaliated against her for disclosing this
medical condition which it perceived to be a disability.  This retaliation was in violation of the
Rehabilitation Act of 1973 and The American With Disabilities Act.

102.    The extent and scope of this retaliation is set forth above and includes
removal of her firearm, forced psychiatric examination in violation of INS regulations, denial of
overtime, the creation of an overtly hostile working environment and other retaliation.

103.    When Ms. Salomon told LaBombard and INS mangers they were in
direct violation of the  ADA and RA  for asking her about the nature, scope, and duration of her
illness, including what medication , INS managers retaliated by sabotaging  her security file.

104.    INS mangers placed a hold and then failed to reinstate her Secret
clearance after the weapon was returned. In February of 2004 INS management sent forth a
request to update Ms .Salomon's clearance due to the merger of DHS and INS all. Ms Salomon's

20

clearance was placed on hold in June 2004 because an "open issue" existed. Discovery will show OPM employee Joan Banks stated the above facts to Ms. Salomon in July 2005.

105.    When Ms Salomon resigned in 2005 due to the pervasive hostility and dangerous physical condition of being in uniform and unarmed, she was unaware her security access had been compromised. Ms. Salomon was unaware she did not hold secret clearance.

106.    Ms. Salomon discovered that CBP did not process her clearance when she began employment with a Federal Contractor. DHS had a contract with SRA INC. SRA could find no record of Ms. Salomon's clearance due to the discriminatory acts of INS management. The clearance is not the subject of litigation. The retaliatory acts of INS mgmt have prevented Ms. Salomon from gaining any type of clearance. INS management has blackballed Ms. Salomon in all federal employment. Ms. Salomon has career permanent status as a GS 11. Ms Salomon is unable to obtain any employment with the federal government to the present date.

107.    An offer by the CIA as a Counter Terrorist Analyst was sent to Ms. Salomon in October 2005. The CIA knew everything about Ms. Salomon when they made the employment offer. Only one new fact was disclosed to the CIA in December of 2005; M. Salomon's weapon had been removed. In February of 2005 the CIA rescinded their offer of employment because of this new information.

108.    INS managers created an overtly hostile workplace by sending an email to the entire Port of Washington announcing Ms. Salomon's restriction of duties because of the removal of her weapon. An Officer without a weapon is stigmatized as mentally impaired. Discovery will show the email.

21

WHEREFORE, Plaintiff, Marissa Leong Salomon, respectfully prays that this Court enter judgments against DHS and Christopher Hess, Valentine Garcia, and Bruce LaBombard, individually, and in their official capacity:

A.    Award damages to the plaintiff for the income and benefits of which he has been deprived to the date of the entry of judgment;

B.    Award plaintiff compensatory damages for her damages as set forth above in detail;

C.    Order that the costs of maintaining this action, including reasonable attorney fees, be awarded to the plaintiff;

D.    Enjoin the INS from enforcing or engaging in a weapon removal policy or practice that discriminates against or disparately impacts women;

E.    Enjoin the INS from enforcing or engaging in a medical examination policy or practice that discriminates against or disparately impacts women; and

F.    Order such other and further relief as this Court may deem just and proper.

Respectfully submitted,

SCOTT M. HARTINGER, #461129
Ethridge, Quinn, McAuliffe, Rowan & Hartinger
100 North Court Street
Frederick, Maryland 21701
(301) 698-8182
smh@eqmrh.com

22

David C. Weaver, Esquire
Ethridge, Quinn, McAuliffe, Rowan
    & Hartinger
100 North Court Street
Frederick, MD 21701
301-698-8182
*dcw@eqmrh.com*

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Scott M. Hartinger, Esquire

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Marissa Leong Salomon<br>7187 Stillwater Court<br>Frederick, MD 21702 | Michael Chertoff, Secretary Depart. of Homeland Security, U.S. Customs & Border Protection, et al |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Frederick
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Scott M. Hartinger
Ethridge, Quinn, McAuliffe, Rowan & Hartinger
100 North Court Street
Frederick, MD 21701
301-698-8182

ATTORNEYS (IF KNOWN)

---

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)

◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☒ 445 American w/Disabilities-Employment<br>☒ 446 Americans w/Disabilities-Other  Rehab Act | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42, U.S.C.S Sec. 2000e-16, the Rehabilitation Act of 1973, 29 U.S.C.S. Sec. 791 and 794

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23  **DEMAND $** 800,000.00  Check YES only if demanded in complaint  **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 4/3/08  SIGNATURE OF ATTORNEY OF RECORD _Scott A Hartinger /daw_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.